IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

JIMENEZ BLAKE WILKERSON,                 :
                                         :
        Plaintiff,                       :
                                         :
v.                                       :        CASE NO.: 1:24-CV-172 (LAG)
                                         :
CITY OF ALBANY, GEORGIA, and             :
CRYSTAL PUGH, in her individual          :
capacity,                                :
                                         :
        Defendants.                      :
                                         :

## ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. 10). For the reasons below, Defendants' Motion is **GRANTED**.

## BACKGROUND

This suit arises from Plaintiff Jimenez Wilkerson's arrest on February 26, 2023, in Albany, Georgia.[1] (Doc. 1 ¶ 9; Doc. 10-2 ¶ 1; Doc. 18-6 ¶ 1). On February 25, 2023, Plaintiff began his shift as a Lyft driver at approximately 9:00 pm. (Doc. 10-2 ¶ 1; Doc. 18-6 ¶ 1; Doc. 12-1 at 41:1–6, 42:19–21). In the early morning of February 26, 2023, after completing his final Lyft drop-off, Plaintiff approached a sobriety checkpoint—Operation Rolling Thunder. (Doc. 10-2 ¶ 2; Doc. 18-6 ¶ 2; Doc. 12-1 at 41:1–6, 42:23–43:1; Doc. 13-1 at 21:7–9). Operation Rolling Thunder was "jointly operated by multiple law enforcement agencies[.]" (Doc. 10-2 ¶ 2; Doc. 18-6 ¶ 2).

---

[1]     The Court derives the relevant facts from the Parties' Statement of Material Facts, responses thereto, and the record in this case. (*See* Docs. 10-2, 18-6, 18-7). When evaluating the Motion for Summary Judgment, the Court construes the facts in the light most favorable to Plaintiff, the nonmoving party. *See* Fed. R. Civ. P. 56; *Jacoby v. Baldwin County*, 835 F.3d 1338, 1342 (11th Cir. 2016) (citation omitted). Where Plaintiff has not controverted facts set forth in Defendant's Statement of Undisputed Material Facts with "specific citation to particular parts of materials in the record," those facts are deemed to be undisputed and admitted. *See* M.D. Ga. L.R. 56; *Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

As Plaintiff drove through the checkpoint, law enforcement officers observed Plaintiff holding a cellphone. (Doc. 10-2 ¶¶ 3–4; Doc. 18-6 ¶¶ 3– 4; Doc. 12-1 at 51:11– 16). Plaintiff testified that he was in the process of turning the Lyft app off when he noticed the officer or officers observing him. (Doc. 12-1 at 51:9–52:3; *see* Doc. 10-2 ¶¶ 5, 6; Doc. 18-6 ¶¶ 5, 6). Through Plaintiff's open car window, Plaintiff heard an officer say, "he has a phone in his hand[.]" (Doc. 12-1 at 52:4–9, 54:17–25). Sergeant Addonis Battle, a Dougherty County Police officer, signaled Plaintiff to pull over to the checkpoint lane. (Doc. 24 at 10:8–18, 27:14–18; Doc. 13-1 at 44:12–13; *see* Doc. 12-1 at 55:23–56:7). Deputy James Moss, a Dougherty County Sheriff officer, approached Plaintiff's vehicle as Plaintiff was still "trying to end the [Lyft] app." (Doc. 12-1 at 53:10–14, 62:8–12; *see* Doc. 18-4). Defendant Crystal Pugh, an Albany Police officer, testified that she was standing a few feet away from Deputy Moss as he approached Plaintiff's vehicle. (Doc. 13-1 at 12:25, 47:10–18). Deputy Moss asked Plaintiff for his license and informed Plaintiff that he would receive a citation for violating the Georgia hands-free law. (Doc. 10-2 ¶ 7; Doc. 18-6 ¶ 7; Doc. 12-1 at 53:16–18; Doc. 18-4 at 2). At this, Plaintiff "laughed[,]" and said, "[M]an stop playing with me." (Doc. 10-2 ¶ 8; Doc. 18-6 ¶ 8; Doc. 12-1 at 56:14–21). Plaintiff gave Deputy Moss his license, insurance information, and registration. (Doc. 12-1 at 58:17–59:11; Doc. 18-7 ¶ 4). Deputy Moss walked from Plaintiff's vehicle to a patrol car to run the tags and write the citation. (Doc. 18-4 at 2; Doc. 18-7 ¶ 4). Defendant Pugh stayed near Plaintiff's vehicle. (Doc. 13-1 at 55:25–6).

As Plaintiff waited for Deputy Moss to return with the citation, Plaintiff grabbed his phone to record nearby activity. (Doc. 10-2 ¶ 8; Doc. 18-6 ¶ 8; Doc. 12-1 at 56:23–57:7, 57:15–19, 60:12–17). Defendant Pugh, still standing nearby, advised Plaintiff that the offense he was being cited for could result in an arrest under Georgia law. (Doc. 10-2 ¶ 9; Doc. 18-6 ¶ 9). Plaintiff responded, "Do it, let's go." (Doc. 10-2 ¶ 10; Doc. 18-6 ¶ 10; Doc. 12-1 at 63:18–25). Defendant Pugh arrested Plaintiff, and Plaintiff was transported to the county detention facility and booked within approximately thirty minutes. (Doc. 10-2 ¶¶ 11–12; Doc. 18-6 ¶¶ 11–12). Plaintiff was released "four to five hours later" after his neighbor posted the $50.00 bond. (Doc. 10-2 ¶ 13; Doc. 18-6 ¶ 13). Later that same day,

Plaintiff recovered his vehicle from the impound by paying $450.00. (Doc. 10-2 ¶ 14; Doc. 18-6 ¶ 14). On April 12, 2023, Plaintiff contested the citation in the Municipal Court of Albany, Georgia. (Doc. 10-2 ¶ 15; Doc. 18-6 ¶ 15; Doc. 18-5). Plaintiff presented a hands-free device, which under Georgia law, may be used by a first-time offender to avoid a conviction, and the Court entered a *nolle prosequi* disposition. (Doc. 10-2 ¶ 15; Doc. 18-6 ¶ 15). Plaintiff served an *ante litem* notice on the City of Albany on October 11, 2023. (Doc. 10-2 ¶ 16; Doc. 18-6 ¶ 16).

On November 6, 2024, Plaintiff initiated this action, alleging federal claims pursuant to 42 U.S.C. § 1983 against Defendant Crystal Pugh (Pugh) and Defendant City of Albany (City of Albany), state law claims of false arrest and intentional infliction of emotional distress against Defendant Pugh, and a state law claim of false arrest against Defendant City of Albany. (Doc. 1). On July 8, 2025, Defendants filed a Motion for Summary Judgment. (Doc. 10). Plaintiff filed a response on July 25, 2025. (Doc. 18). Defendants replied on August 7, 2025. (Doc. 21). Thus, the Motion for Summary Judgment is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) where "the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (first citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); and then citing *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Felts*

3

*v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). On a motion for summary judgment, the Court must "view the record and draw all reasonable inferences in the light most favorable to the non-moving party" and determine whether that evidence could reasonably sustain a jury verdict in its favor. *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013) (citation omitted). The Court shall, however, "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam) (citation omitted). "When that burden has been met, the burden shifts to the nonmovant . . . to go beyond the pleadings and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 557 (11th Cir. 2014) (per curiam) (first citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); and then citing *Celotex Corp.*, 477 U.S. at 324). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

## DISCUSSION

Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims. (*See* Doc. 10-1).

**I.      42 U.S.C. § 1983 Claim against Defendant Pugh in her Individual Capacity**

Plaintiff alleges that Defendant Pugh, acting in her individual capacity, arrested Plaintiff without probable cause in violation of the Fourth Amendment. (Doc. 1 ¶¶ 25–30). In the Motion for Summary Judgment, Defendants argue that Plaintiff's § 1983 claim against Defendant Pugh fails because there was probable cause for the arrest, and Defendant Pugh is entitled to qualified immunity. (Doc. 10-1 at 8–14). "Qualified immunity protects government employees from suit in their individual capacities for discretionary actions in which they engage in the course of their duties." *Alcocer v. Mills*, 906 F.3d 944, 950–51 (11th Cir. 2018) (citations omitted). "Under qualified immunity, 'all but the plainly incompetent or one who is knowingly violating the federal law' are shielded from litigation." *Id.* at 951 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

An official asserting "qualified immunity must first establish that she . . . was acting within the scope of [her] discretionary authority." *Alcocer*, 906 F.3d at 951. An officer acts within her discretionary authority when she "(a) perform[s] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [her] power to utilize[.]" *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004)). The Court looks at "the general nature of the [officer's] action," and not whether the actions "may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* (quoting *Holloman*, 370 F.3d at 1266). Because making an arrest is within the official responsibilities of a law enforcement officer and Defendant Pugh was an Albany Police officer volunteering at Operation Rolling Thunder on the day of the incident, Defendant Pugh was acting in her discretionary authority when she arrested Plaintiff. *See Crosby v. Monroe*, 394 F.3d 1328, 1332 (11th Cir. 2004); (Doc. 13-1 at 12:25, 21:7–9, 22:3–5).

As Defendant Pugh was acting within the scope of her discretionary authority, Plaintiff bears the burden "to show that qualified immunity should not apply." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (citation omitted). To meet

5

this burden, Plaintiff must establish that (1) "the officer's conduct amounted to a constitutional violation" *and* (2) "the right violated was 'clearly established' at the time of the violation." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A court's assessment of whether the plaintiff has met his burden "is fluid" and may be done in whatever order is deemed most appropriate for the case. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) ("These two requirements may be analyzed in any order." (citation omitted)).

"[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citations omitted). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Id.* The Court looks to the elements of the charged offense to determine if there was probable cause. Georgia's hands-free law provides, in pertinent part:

> (c) While operating a motor vehicle on any highway of this state, no individual shall:
> (1) Physically hold or support, with any part of his or her body a:
> (A) Wireless telecommunications device, provided that such exclusion shall not prohibit the use of an earpiece, headphone device, or device worn on a wrist to conduct a voice based communication; or
> (B) Stand-alone electronic device;

O.C.G.A. § 40-6-241(c).

By Plaintiff's own admission, he was operating his vehicle with his phone in his hand. (Doc. 10-2 ¶¶ 3–4; Doc. 18-6 ¶¶ 3–4; Doc. 12-1 at 51:9–52:3). As stated above, Georgia law makes it a crime to operate a motor vehicle while physically holding a cellphone. O.C.G.A. § 40-6-241(c). Additionally, Georgia law provides that any person convicted of violating the hands-free law, "shall be guilty of a misdemeanor[.]" O.C.G.A. § 40-6-241(f)(1). Both "the Supreme Court and Eleventh Circuit have held that an arrest

6

for a misdemeanor traffic violation does not run afoul of the Fourth Amendment." *Govan v. City of McIntyre*, No. 5:16-CV-00503-TES, 2018 WL 3762997, at \*12 (M.D. Ga. Aug. 8, 2018) (first citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); and the citing *Draper v. Reynolds*, 369 F.3d 1270, 1276 n.8 (11th Cir. 2004)). Thus, the facts, as admitted by Plaintiff, establish that there was sufficient probable cause for an arrest.

Moreover, under Georgia law, "[a]n arrest for a crime may be made by a law enforcement officer . . . [w]ithout a warrant if . . . [t]he offense is committed in such officer's presence or within such officer's immediate knowledge[.]" O.C.G.A. § 17-4-20(a)(1). Even though Defendant Pugh did not see Plaintiff commit the initial infraction, the offense was committed within her immediate knowledge. (Doc. 13-1 at 43:18–44:2; 47:10–48:4). Defendant Pugh was nearby at the time Plaintiff was pulled over, and overheard Plaintiff's initial exchange with Deputy Moss. (*Id.* at 48:2–4, 57:2–10). Viewing the facts in the light most favorable to Plaintiff, Defendant Pugh had probable cause to arrest Plaintiff. Accordingly, Defendant Pugh is entitled to qualified immunity. *See Quire v. Miramar Police Dep't*, 595 F. App'x 883, 886 (11th Cir. 2014) ("Claims for false arrest and false imprisonment under § 1983 fail as a matter of law if there was probable cause for the arrest.").

## II.    42 U.S.C. § 1983 Claim against Defendant City of Albany

Plaintiff brings a *Monell* claim[2] against Defendant City of Albany arguing that its "failures . . . [were] the moving force for the unlawful arrest and constitutional violation inflicted on Plaintiff." (Doc. 1 ¶¶ 31–35). Defendants argue that Plaintiff's *Monell* claim against Defendant City of Albany fails as a matter of law absent a constitutional violation. (Doc. 10-1 at 14–15). To impose *Monell* liability, a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 133 (11th

---

[2]    A municipality can be held liable under § 1983 where the alleged constitutional violation results from an official policy, custom, or failure to train amounting to deliberate indifference. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978).

Cir. 2021) (citation omitted). As explained above, given that there was probable cause for Plaintiff's arrest, Plaintiff has failed to show any constitutional violation. Accordingly, Plaintiff's claim against Defendant City of Albany fails as a matter of law. *See Bristol v. Butts County, Georgia*, No. 5:24-CV-00137-TES-CHW, 2024 WL 3558737, at *14 (M.D. Ga. July 24, 2024) (citations omitted).

### III.    State Law Claims against Defendant Pugh

Plaintiff asserts state law claims of false arrest and intentional infliction of emotional distress against Defendant Pugh. (Doc. 1 ¶¶ 42, 46). Defendants argue that Plaintiff's state law claims against Defendant Pugh are barred by Georgia's doctrine of official immunity. (Doc. 10-1 at 15–17). Under Georgia's constitution, official immunity "protects an officer from personal liability arising from his performance of 'official functions' as long as the officer did not act with 'actual malice' or 'actual intent to cause injury.'" *Gates v. Khokhar*, 884 F.3d 1290, 1304 (11th Cir. 2018) (quoting Ga. Const. art. I, § 2, ¶ IX(d)). Additionally, "official immunity protects officers 'who perform discretionary acts in a negligent manner.'" *Speight v. Griggs*, 579 F. App'x 757, 760 (11th Cir. 2014) (per curiam) (quoting *Logue v. Wright*, 392 S.E.3d 235, 237 (Ga. 1990)); *Williams v. DeKalb County*, 840 S.E.2d 423, 428 (Ga. 2020). "In the context of official immunity, 'actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact.'" *Peterson v. Baker*, 504 F.3d 1331, 1339 (11th Cir. 2007) (quoting *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999)). Actual malice "does not include 'implied malice'"—that is, "the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007) (quoting *Merrow v. Hawkins*, 467 S.E.2d 336, 338 (Ga. 1996)). Actual intent to cause injury requires "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999) (citation and internal quotation marks omitted).

As discussed above, Defendant Pugh was acting in her discretionary authority on the night of the arrest. There is no evidence in the record to support the assertion that Defendant Pugh acted with actual malice or intended to cause injury as defined by Georgia

law. Plaintiff's conclusory assertion that Defendant Pugh acted "with reckless disregard for [Plaintiff's] rights" is not enough. (Doc. 18 at 11); *see Murphy*, 647 S.E.2d at 60. Accordingly, Defendant Pugh is protected by official immunity.

## IV.   State Law Claim against Defendant City of Albany

Plaintiff alleges that Defendant City of Albany's acts constitute false arrest under Georgia Law. (Doc. 1 ¶ 42). Defendants argue that Plaintiff's state law claim against Defendant City of Albany fails because Plaintiff did not timely serve the *ante litem* notice required by O.C.G.A. § 36-33-5 and has not identified a valid waiver of the City's sovereign immunity. (Doc. 10-1 at 17–19). Sovereign immunity shields Defendant City of Albany "from legal action unless they have waived their immunity from suit." *Watts v. City of Dillard*, 670 S.E.2d 442, 443 (Ga. Ct. App. 2008). "Sovereign immunity is not an affirmative defense that the governmental defendants must establish . . . . [I]t is a privilege[.]" *Scott v. City of Valdosta*, 634 S.E.2d 472, 476 (Ga. Ct. App. 2006). Thus, in the absence of evidence of waiver, summary judgment for the movant is proper. *See Albertson v. City of Jesup*, 718 S.E.2d 4, 7 (Ga. Ct. App. 2011).

Not only has Plaintiff failed to establish waiver of sovereign immunity, Plaintiff admits that "Plaintiff's Complaint does not plead any valid waiver of sovereign immunity by the City of Albany." (Doc. 18-6 ¶ 17). Accordingly, Defendant City of Albany is immune from suit and the Court need not consider whether Plaintiff timely served the *ante litem* notice.

## CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (Doc. 10) is **GRANTED**.

**SO ORDERED**, this 26th day of February, 2026.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**